630 So.2d 528 (1993)
Antonio TROUTMAN, Petitioner,
v.
STATE of Florida, Respondent.
No. 80,495.
Supreme Court of Florida.
November 4, 1993.
Rehearing Denied January 28, 1994.
*529 Nancy A. Daniels, Public Defender; P. Douglas Brinkmeyer, Asst. Public Defender, Chief, Appellate Div. and Faye A. Boyce, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for petitioner.
Robert A. Butterworth, Atty. Gen. and Wendy S. Morris, Asst. Atty. Gen., Tallahassee, for respondent.
BARKETT, Chief Justice.
We review Troutman v. State, 603 So.2d 608 (Fla. 1st DCA 1992), based on express and direct conflict with State v. Rhoden, 448 So.2d 1013 (Fla. 1984), Bell v. State, 598 So.2d 203 (Fla. 4th DCA 1992), Meyers v. State, 593 So.2d 609 (Fla. 5th DCA 1992), and *530 Flowers v. State, 546 So.2d 782 (Fla. 4th DCA 1989).[1] The issues are whether a trial court must consider each of the statutory criteria required under sections 39.059(7)(c) and (d), Florida Statutes (1991),[2] at the time of sentencing a juvenile as an adult, and, if so, whether the resultant findings at the time of sentencing must be contemporaneously reduced to writing.
Troutman, a sixteen-year-old juvenile, was charged with kidnapping to facilitate a felony, grand theft of an automobile, and aggravated assault with a deadly weapon. He pleaded nolo contendere to false imprisonment and grand theft. The predisposition report recommended that Troutman be sentenced as a juvenile and placed on community control. However, the trial judge concluded that juvenile sanctions were inadequate for Troutman's conduct, even though the judge noted that Troutman had no prior record.[3] The judge announced his intention to treat Troutman as an adult, withheld adjudication of guilt, and sentenced Troutman to three years of probation. A written order explaining the trial judge's rationale for imposing adult sanctions was filed three days later.[4]
The district court upheld the trial court's decision, finding that the criteria were sufficiently considered when the written order and sentencing transcript were read together. 603 So.2d at 609. Because we find that the trial court did not comply with the statutory *531 mandate, we quash the decision of the district court.
The Florida Legislature has established "a firm layer of protection for juveniles" in the area of juvenile justice. See M.F. v. State, 583 So.2d 1383, 1386 (Fla. 1991). The Legislature has made clear its policy that juveniles are to be treated in the least restrictive manner while ensuring the safety of the community. See § 187.201(2)(b)(18), Fla. Stat. (1991). As this Court noted in Rhoden, the juvenile justice statutory scheme "grants to juveniles the right to be treated differently from adults." 448 So.2d at 1016.
While juvenile offenders ordinarily have their cases handled in the juvenile justice system, some juveniles may be tried and sentenced as adults in certain circumstances. See §§ 39.022(5); 39.052(2)(a); 39.047(4)(e)5.; 39.059, Fla. Stat. (1991). However, the Legislature has recognized that sentencing children as adults is generally not appropriate and should be avoided in most cases. § 39.002(5)(a), Fla. Stat. (1991) ("[A] significant number of children have been adjudicated in adult criminal court and placed in Florida's prisons where programs are inadequate to meet their rehabilitative needs and where space is needed for adult offenders.") (discussing legislative intent for the juvenile justice system); id. § 39.002(6) ("The supervision, counseling, rehabilitative treatment, and punitive efforts of the juvenile justice system should avoid the inappropriate use of correctional programs and large institutions.").
Even when a juvenile is tried as an adult, judges must make a determination, in accordance with statutory requirements, whether to sentence the child as an adult or as a juvenile. State v. Cain, 381 So.2d 1361, 1367 (Fla. 1980) ("[E]ven when a juvenile is convicted in adult court he is still given special treatment as a juvenile. Before imposing judgment, the trial court must ... determine whether juvenile or adult sanctions are appropriate."). A juvenile's right to this special treatment at sentencing continues even when the juvenile enters into a plea agreement authorizing the imposition of adult sanctions. Sirmons v. State, 620 So.2d 1249 (Fla. 1993).
Section 39.059(7)(c) explicitly requires that the suitability or nonsuitability of adult sanctions be considered through use of the enumerated statutory criteria "before any other determination of disposition." Furthermore, each of the criteria must be considered by the trial court in making the decision to sentence a child as an adult. § 39.059(7)(d), Fla. Stat. (1991). The requirements of section 39.059(7) apply both to cases in which the child is waived into adult court and to cases such as Troutman's, in which the proceeding begins in adult court under the direct file provision. See Id., §§ 39.022(5), .047(4)(e)5.;.052(2).[5]
The Legislature has made clear in the statute itself that adherence to the requirements of section 39.059 is not optional: "It is the intent of the Legislature that the foregoing criteria and guidelines shall be deemed mandatory... ." § 39.059(7), Fla. Stat. (1991). We therefore hold that a trial court must consider each of the criteria of section 39.059(7)(c) before determining the suitability of adult sanctions. In so doing, the trial court must give an individualized evaluation of how a particular juvenile fits within the criteria. Mere conclusory language that tracks the statutory criteria is insufficient. Jackson v. State, 588 So.2d 1085 (Fla. 5th DCA 1991); Youngblood v. State, 560 So.2d 409 (Fla. 5th DCA 1990); Ervin v. State, 561 So.2d 423 (Fla. 3d DCA 1990).
We next turn to the question of whether the court's evaluation and findings must be contemporaneously reduced to writing. Section 39.059(7)(d) makes clear that any decision to impose adult sanctions must be in writing and must conform with the criteria in section 39.059(7)(c). In Rhoden, this Court stated:

*532 The legislature has emphatically mandated that trial judges not only consider the specific statutory criteria pertaining to the suitability of adult sanctions, but that they also reduce to writing their findings of fact and reasons for imposing an adult sentence on a juvenile. A written order is necessary in order to make effective the right of sentence review granted to juveniles by the legislature.
448 So.2d at 1016-17 (emphasis supplied).
The requirement that the trial court's findings and reasons be in writing cannot be met by a transcript. As Troutman observes, the word "render" in the second sentence of section 39.059(7)(d) requires that a written, signed order be filed with the clerk of the court. See also Fla.R.App.P. 9.020(g). The order must include specific findings of fact and the reasons for the decision to impose adult sanctions. § 39.059(7)(d), Fla. Stat. These findings and reasons should be discussed as they relate to the particular juvenile whose case is under review and in the context of each of the criteria in section 39.059(7)(c).
This Court has previously examined two other sentencing schemes where written findings are required by statute: section 921.141(3), Florida Statutes (1991), findings in support of a sentence of death, and section 921.001(6), Florida Statutes (1991), reasons delineating a departure from a guidelines sentence. As we have noted previously, the writing requirements in these statutory schemes and in section 39.059(7) are similar. See Parker v. State, 546 So.2d 727, 728-29 (Fla. 1989). The similarity exists because of the need to ensure that statutory safeguards are strictly maintained when trial judges treat individuals substantially more severely than is customary.
In interpreting section 921.141(3), this Court has held that the written findings supporting a sentence of death must be issued concurrent with the oral sentencing pronouncement. Stewart v. State, 549 So.2d 171, 176 (Fla. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3294, 111 L.Ed.2d 802 (1990); Grossman v. State, 525 So.2d 833, 841 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989). Similarly, we have insisted that departures from guidelines sentences be contemporaneously reduced to writing. Smith v. State, 598 So.2d 1063 (Fla. 1992); Ree v. State, 565 So.2d 1329, 1331 (Fla. 1990), modified, State v. Lyles, 576 So.2d 706 (Fla. 1991), receded from in part, Smith v. State, 598 So.2d 1063 (Fla. 1992). We have explained that:
Requiring a court to write its reasons for departure at the time of sentencing reinforces the court's obligation to think through its sentencing decision, and it preserves for appellate review a full and accurate record of the sentencing decision.
Smith, 598 So.2d at 1067.
This rationale is equally applicable here. We hold that the written findings and reasons must be provided at the time of sentencing. As we did in the context of guideline departure sentences, we recognize the possible difficulties in providing written reasons immediately at the time of sentencing. Ree; Lyles. The procedure authorized by the Court in Lyles is appropriate in this context as well:
We find that when express oral findings of fact and articulated reasons for the departure are made from the bench and then reduced to writing without substantive change on the same date, the written reasons for the departure sentence are contemporaneous, in accordance with Ree. To adopt a contrary view would be placing form over substance. The ministerial act of filing the written reasons with the clerk on the next business day does not, in our view, prejudice the defendant in any respect.
576 So.2d at 708-09.
Applying these principles to Troutman's case, we find that the trial court made inadequate findings at the time of sentencing. The written findings were issued three days after sentencing. Moreover, even if the written findings had been issued contemporaneously, they would be considered inadequate because some of the findings and reasons were merely conclusory.
Accordingly, the decision of the district court of appeal is quashed, and the case *533 is remanded for proceedings in accordance with this opinion. Should the trial judge still desire to sentence Troutman as an adult, the statutory criteria must be strictly applied and findings reduced to writing as described above. The statutory evaluation must, of course, be made in light of conditions existing at the time of the original sentencing.[6]
It is so ordered.
McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
OVERTON, J., dissents with an opinion.
OVERTON, Justice, dissenting.
I dissent. I find that the transcript of the sentencing hearing setting forth the trial judge's reasons, when taken together with the trial judge's subsequently entered written order, sufficiently meets the requirements of section 39.059, Florida Statutes (1991), necessary to impose adult sanctions. Consequently, I would approve the district court's decision.
The majority's strict construction of the statute will only increase problems in the operation of an already over-burdened juvenile justice system.
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
[2] Section 39.059(7)(c) requires the trial court to consider the following six criteria in considering the suitability of adult sanctions:

1. The seriousness of the offense to the community and whether the protection of the community requires adult disposition.
2. Whether the offense was committed in an aggressive, violent, premeditated, or willful manner.
3. Whether the offense was against persons or against property, greater weight being given to offenses against persons, especially if personal injury resulted.
4. The sophistication and maturity of the child.
5. The record and previous history of the child, including:
a. Previous contacts with the department, the Department of Corrections, other law enforcement agencies, and courts;
b. Prior periods of probation or community control;
c. Prior adjudications that the child committed a delinquent act or violation of law; and
d. Prior commitments to institutions.
6. The prospects for adequate protection of the public and likelihood of reasonable rehabilitation of the child if he is assigned to services and facilities for delinquent children.
Section 39.059(7)(d) provides:
Any decision to impose adult sanctions shall be in writing and in conformity with each of the above criteria. The court shall render a specific finding of fact and the reasons for the decision to impose adult sanctions. Such order shall be reviewable on appeal by the child pursuant to 39.069.
[3] Regarding Troutman's suitability for adult sanctions, the trial judge stated:

He [Troutman] has no prior record, but I think this is a very serious case. I think in a lot of ways he's in the same situation as Mr. Hill. Mr. Hill has had more violent-type activities probably than Mr. Troutman has, but I'm concerned about the ability of juvenile sanctions in this case to impress upon Mr. Troutman the results of this type of action. So I am going to sentence him as an adult.
Hill was sentenced as an adult on the same day as Troutman for an unrelated crime. The same appellate panel that affirmed Troutman's sentence reversed Hill's because all of the criteria outlined in section 39.059(7)(c), Florida Statutes, were not considered in the sentencing order. Hill v. State, 605 So.2d 514 (Fla. 1st DCA 1992).
[4] The trial judge wrote:

The court imposed adult sanctions in lieu of juvenile sanctions in this case for the following reasons:
1. The primary charge in this case, false imprisonment, was committed in a premeditated and willful manner and was extremely serious, given that the Defendant perpetrated the false imprisonment with the use of a scissors, which could be considered a deadly weapon. The Defendant is just shy of his seventeenth birthday; however, he demonstrates a certain street sophistication beyond his chronological age.
2. The Defendant has only one prior contact with the juvenile authorities, which was not a serious offense.
3. The period of time available to impose juvenile sanctions is insufficient to adequately protect the community and to afford the Defendant sufficient counseling to ensure his rehabilitation.
4. The imposition of juvenile sanctions are insufficient to impress upon the Defendant the seriousness of this type of action.
[5] Strict adherence to the provisions of section 39.059(7) is especially important in cases involving the direct filing of criminal charges in adult court because the provisions provide the only formal means of ensuring that the juvenile is being properly treated as an adult. Unlike most situations in which a child is waived into adult court, direct file cases do not involve an initial hearing and determination by the trial judge that transfer of the case to adult court is appropriate. §§ 39.047(4)(e)5.; .052(2), Fla. Stat. (1991).
[6] We recognize that some judges have suggested that in cases like Troutman's we should apply the rule in Pope v. State, 561 So.2d 554 (Fla. 1990) and remand to the trial court with instructions to impose juvenile sanctions. See, e.g., Tighe v. State, 571 So.2d 83, 84 (Fla. 5th DCA 1990) (Dauksch, J., concurring and dissenting). However, we do not agree that Pope is analogous. In Pope, we were concerned that sentencing judges on remand would search for reasons to justify a departure sentence when the judge's initial reasons for departure had been reversed by an appellate court. Thus, we held that when an appellate court reverses a departure sentence because there were no written reasons, the court must remand for resentencing with no possibility of departure from the guidelines. In sentencing juveniles as adults, however, trial judges are limited to evaluating specific criteria. § 39.059(7)(c)-(d), Fla. Stat. (1991). Thus, sentencing judges must strictly follow the dictates of the statutes. They do not have the opportunity to search for "new" reasons to sentence a juvenile as an adult when the original reasons are determined by an appellate court to be insufficient or invalid.